O

1

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SOUTHERN DIVISION**

11

12  EDDIE FISHER BAKER III,         )   Case No. CV 08-3199-MLG
                                    )
13                  Plaintiff,      )   MEMORANDUM OPINION AND ORDER
                                    )
14          v.                      )
                                    )
15  MICHAEL J. ASTRUE,              )
    Commissioner of Social         )
16  Security,                       )
                                    )
17                                  )
                    Defendant.      )
18  _____ )

19      Plaintiff Eddie Fisher Baker seeks judicial review of the

20  Commissioner's denial of his application for supplemental security

21  income benefits under the Social Security Act. For the reasons stated

22  below, the decision of the Social Security Commissioner is **AFFIRMED**.

23

24  **I.    Facts and Procedural History**

25      Plaintiff was born on January 10, 1961 and was 46 years old at the

26  time of the administrative hearing. (Administrative Record ("AR") 16.)

27  He has a high school education, and he previously worked as a theme park

28  caterer/maintenance worker. Plaintiff has not been gainfully employed

1   since 1991. He was incarcerated from 1996 until 2004. (AR 26, 101.)

2        Plaintiff filed an application for supplemental security income

3   benefits on January 10, 2005, alleging a disability onset date of

4   February 27, 1986, due to a mood disorder and substance addiction

5   disorder (Joint Stip. 2). In addition he claimed disability beginning on

6   December 17, 2003 because of a lower back injury (AR 93). The

7   Commissioner denied Plaintiff's application on June 10, 2005. (AR 35.)

8   Administrative Law Judge ("ALJ") Dale A. Garwal held a hearing on

9   January 29, 2007, at which Plaintiff testified and was represented by

10  counsel. (AR 9.) A vocational expert also testified at the hearing.

11  After applying the five-step sequential analysis mandated by the Social

12  Security regulations,[1] the ALJ concluded that Plaintiff was not disabled

13  and denied his application for benefits on September 10, 2007. (AR 6.)

14       In evaluating Plaintiff's claim, the ALJ found that Plaintiff's

15  only severe medically determinable impairment was mood disorder and

16  substance addiction disorder, concluding that no evidence in the record

17  showed that Plaintiff had any severe physical impairment. (AR 11.) The

18  ALJ then determined that Plaintiff's mental impairments did not meet or

19  equal any listed impairment. (AR 12.) The ALJ concluded that Plaintiff

20  had the residual functional capacity ("RFC") to perform the full range

21  of work at all exertional levels, but would be limited to simple,

22  routine tasks. (*Id.*) The ALJ also noted that Plaintiff had mild

23

24

25  [1]  The five steps are as follows: (1) whether the claimant is
    engaged in substantial gainful activity; (2) whether the claimant's
    impairment is "severe"; (3) whether the impairment meets or equals one
26  of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether
    the claimant is able to return to past relevant work; and (5) whether
27  the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4).
    These steps are cumulative, meaning that the ALJ need not consider
28  further steps after finding that a step does not favor the claimant.

1   limitations in the ability to perform activities of daily living, to

2   maintain social functioning, and to maintain concentration, persistence,

3   and pace. (*Id.*) Relying on the vocational expert's testimony, the ALJ

4   determined that Plaintiff could work as a textile industry general

5   laborer or a box bender and, therefore, was not disabled under the

6   Social Security Act. (AR 17.)

7       The Appeals Council denied Plaintiff's request for review on April

8   23, 2008, and Plaintiff filed this action on May 22, 2008. Plaintiff

9   alleges that the ALJ erred by (1) improperly rejecting the lay witness

10  testimony of Plaintiff's niece; (2) improperly rejecting a treating

11  psychiatrist's opinions; (3) failing to develop the record regarding a

12  treating psychologist's opinion; and (4) failing to develop the record

13  regarding Plaintiff's mental health treatment in 2004 and 2005. (Joint

14  Stip. 2-3.) Plaintiff seeks an award of benefits or, in the alternative,

15  remand for further administrative proceedings. (Joint Stip. 22.)

16

17  **II.   Standard of Review**

18      The Court must uphold the Social Security Administration's

19  disability determination unless it is not supported by substantial

20  evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528

21  F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec.

22  Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means

23  more than a scintilla, but less than a preponderance; it is evidence

24  that a reasonable person might accept as adequate to support a

25  conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

26  2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

27  2006)). To determine whether substantial evidence supports a finding,

28  the reviewing court "must review the administrative record as a whole,

1  weighing both the evidence that supports and the evidence that detracts

2  from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

3  720 (9th Cir. 1996). "If the evidence can support either affirming or

4  reversing the ALJ's conclusion," the reviewing court "may not substitute

5  [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

6

7  **III. Discussion**

8      **A.    The ALJ Properly Considered the Lay Witness Statements**

9      Plaintiff contends that the ALJ erred by failing to properly

10  consider the lay witness statement of Plaintiff's niece, Maiereia

11  Lambert. (Joint Stip. 3.) Ms. Lambert filled out a questionnaire for the

12  Social Security Administration on February 4, 2005, in which she

13  outlined her observations regarding Plaintiff's limitations. (AR 69-77.)

14  Ms. Lambert stated that Plaintiff "used to be more attentive and able to

15  understand better," that his attention span was shorter, that his back

16  hurt when he undertook certain activities, that he had difficulty

17  sleeping, that he did not need reminders to take care of himself, that

18  he went out almost every day and shopped for his own personal items,

19  that he was easily aggravated, that he couldn't concentrate for long

20  periods of time without taking breaks, that he had difficulty lifting,

21  bending, standing, walking, sitting, kneeling, understanding, following

22  instructions,[2] getting along with others, concentrating, and remembering,

23  that he could walk two or three blocks before needing to rest, and that

24  he had problems with authority figures. (AR 69-74.) The ALJ addressed

25  Ms. Lambert's statement as follows:

26

27        [2] The Court notes that Ms. Lambert gave contradictory answers as
to Plaintiff's ability to follow instructions, first indicating that he
has difficulty following instructions and later stating that he "follows

28  written instruction well" and spoken instructions "very well." (AR 74.)

1    The undersigned Administrative Law Judge has carefully

2    considered the statements of the claimant's niece, M. Lambert,

3    that the claimant is unable to work (Exhibit 2E). However, the

4    undersigned rejects the opinion of this lay witness, because

5    the behavior of the claimant that this witness observed could

6    be due to causes other than a disabling mental condition, and

7    this opinion is not compatible with the record as a whole.

8  (AR 14.)

9       A lay witness can provide competent evidence about a claimant's

10 symptoms and limitations. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

11 Cir. 1996). An ALJ must take into account such lay testimony, unless the

12 ALJ expressly disregards the testimony and gives reasons germane to each

13 witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001);

14 *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate

15 reasons include that the testimony is unsupported by the medical record

16 or other evidence or that the testimony is otherwise inconsistent.

17 *Lewis*, 236 F.3d at 511-12 (citing *Vincent v. Heckler*, 739 F.2d 1393,

18 1395 (9th Cir. 1984)).

19      Here, the ALJ gave germane reasons for rejecting Ms. Lambert's

20 statements: that the behavior she observed was not necessarily caused by

21 a disabling mental condition, and that her opinion was incompatible with

22 the record. (AR 14.) Having reviewed the record, the Court agrees with

23 the ALJ that Ms. Lambert's observations, to the extent they suggest an

24 inability to work, are inconsistent with the record as a whole, and the

25 medical records specifically. As discussed in further detail in the

26 sections below, the medical records reveal that Plaintiff's mental

27 impairments were relatively mild and largely controlled by medication.

28 Additionally, the Court notes that Ms. Lambert's observations are not

1   inconsistent with the RFC the ALJ assigned, namely that Plaintiff could

2   work at all exertional levels but would be limited to simple, routine

3   tasks.

4       Plaintiff's contention that "there was absolutely no discussion of

5   [Ms. Lambert's] statements" is incorrect. The ALJ properly rejected the

6   lay witness testimony, giving reasons germane to the witness that are

7   supported by the record. Plaintiff is not entitled to relief on this

8   claim.

9       **B.    The ALJ Properly Considered the Medical Records and Treating**

10      **Psychiatrist's Opinion**

11      Plaintiff claims that the ALJ erred by failing to adequately

12  consider the medical evidence. Specifically, Plaintiff contends that the

13  ALJ improperly rejected the opinion of a treating psychiatrist, M.

14  Sigman, M.D., from the Los Angeles County Department of Mental Health

15  ("LACDMH"). (Joint Stip. 7-9.) Plaintiff notes that Dr. Sigman diagnosed

16  Plaintiff with psychotic disorder, not otherwise specified, and post-

17  traumatic stress disorder, assigning Plaintiff a global assessment of

18  functioning ("GAF") of between 40 and 50. (Joint Stip. 7-8.) Plaintiff

19  contends, "Dr. Sigman has established that the Plaintiff does suffer

20  from a severe mental impairment that can negatively impact his ability

21  to perform and sustain full time work." (Joint Stip. 9.)

22      The ALJ evaluated Dr. Sigman's treatment notes as follows:

23      Treating documents provided by the [LACDMH] for the time

24      period from June 2006 to May 2007 show that the claimant's

25      mental health has fluctuated and improved with prescribed

26      medications and that the claimant's mental condition is not

27      sufficiently debilitating as to preclude the performance of

28      substantial gainful activity or to prevent the claimant from

1          performing simple routine tasks for eight-hours a day, five

2          days per week.

3  (AR 14.) Plaintiff argues that the ALJ misrepresented Dr. Sigman's

4  findings to support his conclusion that Plaintiff was not disabled.

5  (Joint Stip. 9.) Plaintiff's main complaint with the ALJ's discussion of

6  Dr. Sigman's findings appears to be that the ALJ did not mention the GAF

7  scores Dr. Sigman assigned to Plaintiff.

8          The GAF scale provides a measure for an individual's overall level

9  of psychological, social, and occupational functioning. Am. Psychiatric

10  Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed.

11  1994). The scale "may be particularly useful in tracking the clinical

12  progress of individuals in global terms, using a single measure." *Id.* A

13  GAF range of 41-50 reflects "[s]erious symptoms (e.g., suicidal

14  ideation, severe obsessional rituals, frequent shoplifting) or any

15  serious impairment in social, occupational, or school functioning (e.g.,

16  no friends, unable to keep a job)." *Id.* at 32. As noted in the

17  regulations, "The GAF scale ... is the scale used in the multiaxial

18  evaluation system endorsed by the American Psychiatric Association. It

19  does not have a direct correlation to the severity requirements in our

20  mental disorders listings." Revised Criteria for Evaluating Mental

21  Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65

22  (Aug. 21, 2000). In evaluating the severity of a claimant's mental

23  impairments, a GAF score may help guide the ALJ's determination, but an

24  ALJ is not bound to consider it. *Orellana v. Astrue*, 2008 WL 398834, at

25  *9 (E.D. Cal. Feb. 12, 2008) ("While a GAF score may help the ALJ assess

26  Claimant's ability to work, it is not essential and the ALJ's failure to

27  rely on the GAF does not constitute an improper application of the

28  law."); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.

2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The ALJ interpreted Dr. Sigman's treating notes as showing that Plaintiff's mental impairments had improved with medication and were not overly debilitating. In reviewing the notes, it is clear that the ALJ's characterization of the notes is accurate. For example, on November 30, 2006, Dr. Sigman quotes Plaintiff as stating, "The medicine works well. It's the right amount." (AR 262.)  Dr. Sigman repeatedly indicates that Plaintiff's mood is euthymic, that he denies experiencing psychotic symptoms, and that he is generally stable with medication. (AR 260-68.) Dr. Sigman offers no opinion as to Plaintiff's ability, or inability, to work or function.

Plaintiff does not identify any specific notes Dr. Sigman made that would contradict the ALJ's description of the records. Plaintiff relies entirely on the ALJ's failure to mention the GAF score in arguing that the ALJ misrepresented the record.[3] As discussed above, the GAF score does not directly correlate with a disability determination under the Social Security Act, functioning as more of a clinical benchmark or descriptor than an opinion as to a patient's limitations caused by a

---

[3]  Plaintiff argues, "Not only did Dr. Sigman establish that the Plaintiff's mental impairment and functional limitations lasted a significant amount of time, but, contrary to the ALJ's unfathomable determination, Dr. Sigman has established that the Plaintiff's mental condition is indeed sufficiently debilitating to preclude the performance of substantial gainful activity or to prevent him from performing simple routine tasks." (Joint Stip. 8.) To support this argument, Plaintiff lists the dates for each visit Plaintiff had with Dr. Sigman, along with the diagnoses and GAF score for each date. Plaintiff offers no other evidence to support his argument that Dr. Sigman found Plaintiff's mental condition to be significantly debilitating. Accordingly, the Court assumes that Plaintiff is relying on the GAF score for his argument.

1   specific impairment. In this case, as Defendant noted in the briefing,

2   Plaintiff has experienced significant difficulties in his life,

3   including extended unemployment, repeated incarceration, and admitted

4   illegal drug use. (Joint Stip. 10.) These facts could certainly lead Dr.

5   Sigman to assign Plaintiff a GAF of 40 to 50, which sheds no light on

6   whether Plaintiff's medically determinable mental illness prevents him

7   from working.

8        In any event, the ALJ was not required to mention Dr. Sigman's GAF

9   score, and his characterization of Dr. Sigman's treating notes was

10  supported by substantial evidence in the record. Plaintiff is not

11  entitled to relief on this claim.

12  **C.     The ALJ Properly Considered the Opinion of Dr. Miersma and**

13  **Developed the Record**

14       Dr. Miersma, a psychologist with the California Department of

15  Corrections, recorded his observations of Plaintiff's demeanor during an

16  evaluation on April 7, 2005, as follows:

17       [Plaintiff] appeared to be fully oriented to time and place

18       and was aware of the purpose of the evaluation session and was

19       able to fully participate in the process. His mood appeared to

20       be euthymic (although he stated that he does get depressed

21       sometimes) and his affect congruent with his mood. [Plaintiff]

22       was calm and cooperative and willingly answered all questions

23       presented to him.... His short term memory and fund of general

24       knowledge are both within normal limits. [Plaintiff's] thought

25       process appears to be unimpaired and goal oriented and did not

26       suggest the presence of serious mental illness. His insight

27       and judgment are both fair.

28  (AR 253.) Dr. Miersma recommended that Plaintiff participate in

9

counseling on a monthly basis, the focus of which would be "re-offense prevention via: development of victim empathy, correction of cognitive distortions, and development of appropriate coping skills." (*Id.*) Dr. Miersma diagnosed Plaintiff with bipolar disorder, most recently evidenced by a manic episode two years prior to the evaluation, and polysubstance abuse in full remission. (*Id.*)

The ALJ purportedly rejected Dr. Miersma's opinion of Plaintiff's mental impairments for three reasons: (1) that Dr. Miersma's recommendation for monthly counseling, as opposed to more frequent counseling, showed that Plaintiff's mental impairments were mild rather than significantly debilitating; (2) that Dr. Miersma simply reiterated Plaintiff's own statements regarding his impairments; and (3) that Dr. Miersma "has not provided an assessment of the claimant's residual functional capacity which is compatible with the record as a whole. (AR 14.)

Plaintiff first contends that the ALJ improperly rejected Dr. Miersma's opinion without providing specific and legitimate reasons for doing so. (Joint Stip. 13-16.) However, Plaintiff never adequately explains in the briefing how Dr. Miersma's opinion support Plaintiff's claim. Instead, Plaintiff identifies a comment in the treatment notes that has no bearing on the extent of Plaintiff's mental impairments, and, in fact, tends to further support the conclusion that Plaintiff's impairments were mild. Plaintiff claims, "[H]ad the ALJ properly reviewed Dr. Miersma's treatment plan of the Plaintiff, he would [have] noted that Dr. Miersma stated, 'The focus of treatment will be on re-offense prevention via: development of victim empathy, correction of cognitive distortions, and development of appropriate coping skills.'" (Joint Stip. 14.) The stated treatment goal of "re-offense prevention,"

1 rather than Plaintiff's allegedly disabling mental illness,

2 significantly undermines Plaintiff's argument.

3    Additionally, the fundamental flaw in Plaintiff's argument is that

4 Dr. Miersma's opinion, as reflected in the treatment notes, is not

5 favorable to Plaintiff's disability claim, a fact that the ALJ

6 inexplicably appears to have missed. Although an ALJ should generally

7 assign greater weight to a treating physician's opinion than that of a

8 non-treating physician, *see* 20 C.F.R. § 416.927(d)(1), in this case the

9 ALJ opined that Plaintiff's presentation "did not suggest the presence

10 of serious mental illness."[4] (AR 253.) That the ALJ incorrectly assumed

11 that the treating psychologist's opinion was more favorable to Plaintiff

12 than it actually was clearly does not justify a remand, requiring

13 significant time and resources, so the ALJ can accurately state that

14 Plaintiff's own treating psychologist's notes do not support his claim

15 for benefits.

16    Second, Plaintiff argues that the ALJ should have developed the

17 record to clarify Dr. Miersma's opinion as to Plaintiff's RFC. (AR 15.)

18 Plaintiff relies on the ALJ's statement that Dr. Miersma "has not

19 provided an assessment of the claimant's residual functional capacity

20 which is compatible with the record as a whole." (Joint Stip. 15; AR

21 14.) Plaintiff correctly states that the existence of ambiguous

22 evidence, or inconclusive or otherwise inadequate medical records,

___

[4] The Court also notes that Dr. Miersma reached that conclusion at a time when Plaintiff was not taking any medication to control his symptoms. (AR 253 ("[H]e no longer takes medication of any kind.")) On June 20, 2005, Dr. Miersma recommended that Plaintiff be evaluated by a psychiatrist for medication, because Plaintiff "was somewhat confused and incoherent relating some family problems and his apparent inability to handle them or interpret them [e]ffectively." (AR 250.) Dr. Miersma questioned whether street drugs had caused Plaintiff's confusion. (*Id.*) Dr. Miersma subsequently noted that Plaintiff's demeanor improved after taking medication, and he continued to do well until he was discharged from parole in February 2006. (AR 238-47.)

11

1  triggers an ALJ's duty to seek clarification or additional evidence from

2  medical sources. *Mayes v. Massanari*, 276 F.3d at 459; *Tonapetyan v.*

3  *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, however, the ALJ did

4  not conclude that the record was inadequate for him to make a finding as

5  to the severity of Plaintiff's mental impairments, which would trigger

6  his duty to expand the record. Nor did the ALJ find any ambiguity or

7  inconclusive results in the medical record. Instead, the ALJ concluded

8  that the record demonstrated that Plaintiff's mental impairments,

9  although "severe" under the regulations, were relatively mild and

10 controlled with medication. Nothing in the record was ambiguous or

11 inconclusive, and the ALJ's decision is supported by substantial

12 evidence in the record. Plaintiff is not entitled to relief on this

13 claim.

14      **D.   The ALJ Properly Developed the Record as to Plaintiff's**

15           **Treatment in 2004-2005**

16      In evaluating the alleged severity of Plaintiff's symptoms, the ALJ

17 determined that Plaintiff was not entirely credible, because, among

18 other things, "it is unclear from the record whether the claimant truly

19 needed mental health treatment during calendar years 2004 and 2005 or

20 whether the claimant's main reason for participating in ... treatment

21 ... was fulfilling the conditions of his continued parole." (AR 15.)

22      Plaintiff's argument on this point is interesting. He contends that

23 "[w]hether the Plaintiff's mental health treatment was a conditional

24 aspect of his parole is irrelevant." (Joint Stip. 19.) Plaintiff then

25 argues that the case should be remanded even though the point is

26 irrelevant, because "if the ALJ was concerned about the Plaintiff's need

27 for mental health treatment, he should have made a reasonable effort to

28 recontact the California Department of Corrections Parole and Community

1 | Services Division's psychiatric department in order to ascertain more
2 | information." (Joint Stip. 19-20.) Defendant also concedes that "whether
3 | Plaintiff attended counseling sessions as part of his parole was
4 | irrelevant." (Joint Stip. 21.)

5 |     The Court agrees with the parties. Whether Plaintiff attended
6 | counseling solely as a condition of parole has no bearing on any
7 | relevant issue raised in this case. The implication of the ALJ's
8 | statement was that Plaintiff only went to counseling because he had to,
9 | which suggested to the ALJ that Plaintiff was being less than
10 | forthcoming as to the extent of his limitations. The ALJ made this point
11 | in assessing Plaintiff's credibility, which Plaintiff has not
12 | challenged. The records themselves are clearly not ambiguous or
13 | inconclusive, and both parties have conceded that it is irrelevant
14 | whether the state required Plaintiff's attendance at mental health
15 | counseling as part of his parole. The mere fact that the ALJ mentioned
16 | an issue in passing that both parties agree has no real bearing on the
17 | case simply does not trigger a duty to develop the record. The ALJ did
18 | not err.

19 |

20 | **IV.   Conclusion**

21 |     For the reasons stated above, the decision of the Social Security
22 | Commissioner is **AFFIRMED**.

23 |

24 | DATED: February 4, 2009

25 |

26 |                                     _____
                                      MARC L. GOLDMAN
                                      United States Magistrate Judge

27 |

28 |